STATE EX REL. SCHIEWITZ, Appellant, vs. WISCONSIN REAL ESTATE BROKERS BOARD and others, Respondents.

*December 10, 1925—January 12, 1926.*

*Brokers: License to engage in real-estate business: Trustworthiness: Evidence: Sufficiency: Former conviction of applicant: Certiorari: Reversal of finding of real estate brokers board.*

1. Where an applicant for a real-estate broker's license was convicted of permitting the use of a building for immoral purposes, payment of the penalty exacted by the law, the restoration to citizenship, and the living of an upright life for eight years thereafter is *held* to overcome the moral turpitude involved in the commission of the offense; and the evidence in the record is sufficient to show affirmatively that the applicant is now possessed of the required moral qualities to engage in the real-estate business.    p. 636.
2. On an appeal from a judgment in *certiorari* to review an order denying relator's application, the record is assumed to disclose all the facts acted upon by the real estate brokers board. p. 636.

3. Though the findings of the board will not be disturbed on *certiorari* if there is any competent evidence to sustain them, where the evidence is all one way the board cannot disregard it, and its decision contrary to the evidence will be reversed. p. 636.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The relator made application in due form to the *Wisconsin Real Estate Brokers Board* for a license to engage in the real-estate business. The board of its own motion held a hearing on the matter at Milwaukee on July 22, 1924. The relator was notified to appear and was there sworn and testified, he being the only person whose testimony was taken. The board did not request any one else to appear; did not except to the application either in form or contents, and when the relator was through testifying the proceeding ended. From the relator's application it appeared that in 1916 he was arrested charged with permitting a building to be used for immoral purposes; that he pleaded *nolle contendere,* was fined $250, and that after paying his fine he was restored to citizenship by Governor Philipp. It further appeared that he was elected to the legislature of 1917 and served during that session. Previous to the hearing had in Milwaukee the board had sent letters to Fred Zimmerman, secretary of state, J. H. Lawton, a merchant in Milwaukee, and W. B. Rubin, a lawyer in Milwaukee, inquiring into the character of the relator. These letters were sent to these persons because the relator furnished them as references. Mr. J. H. Lawton stated that he had known the relator for twenty years; that he considered him competent to engage in the real-estate business and that he was of good moral character. Mr. Zimmerman stated he had known him for five years; that he considered him competent to engage in the real-estate business and that he was a man of good moral character. Mr. Rubin stated that he had known the relator for twenty years, but had known him quite well for

the last ten years, and further added: "I consider him a person of good moral character and competent and trustworthy to engage in the real-estate business." In his examination at Milwaukee the relator stated: "I acted the part of the guilty one by shielding some one else and looking after their interest." In his examination he answered the question, "Have you read the real estate licensing law?" "Not yet, I didn't think it necessary until I had been admitted to practice." In his application for a license he answered the question, "Have you read chapter 136, Wisconsin Statutes of 1923, the Wisconsin Real Estate Brokers Law, and are you familiar with the contents of that?" "Yes." After the hearing in Milwaukee the *Real Estate Board* entered the following order:

"*Charles S. Schiewitz,* Milwaukee, Milwaukee county, Wisconsin, having made application for a license to do a real-estate broker's business and having failed to present due and proper evidence of his trustworthiness and competency to do a real-estate broker's business although duly requested, and having been given an opportunity to furnish the same at a hearing held July 22, 1924, at the council chamber in the city hall of Milwaukee, county of Milwaukee, state of Wisconsin, and the board, being duly advised in the premises, finds and determines that *Charles S. Schiewitz* has failed to furnish proper evidence to this board of his trustworthiness and competency to act as a real-estate broker in such a manner as to safeguard the interests of the public. Wherefore it is ordered and determined that the application of *Charles S. Schiewitz* be and the same is hereby denied.

"Dated this 30th day of August, 1924."

To test the correctness of the above order the relator sued out a writ of *certiorari.* The circuit court for Dane county sustained the order, and from a judgment entered accordingly the relator appealed.

For the appellant there were briefs signed by *Rubin, Wurster & Rouiller,* and oral argument by *W. B. Rubin* and *H. W. Hartwig,* all of Milwaukee.

For the respondents there was a brief by the *Attorney General* and *F. C. Seibold,* assistant attorney general, and oral argument by *Mr. Seibold.*

VINJE, C. J.   It will be seen by the order entered by the board that the reason they refused to grant the relator a license to engage in the real-estate business was because he "failed to present due and proper evidence of his trustworthiness and competency to do a real-estate broker's business" and that "he failed to furnish proper evidence to this board of his trustworthiness and competency to act as a real-estate broker in such manner as to safeguard the interests of the public." It will be seen from the opinion of the trial court that it disposed of the case upon the same ground.   The court says:

"The fact that applicant has been convicted of an offense involving moral turpitude, standing without any further explanation than that given by applicant, presents a record upon which the court cannot say that there is no evidence to support the determination of the board. It is undoubtedly true that the facts surrounding such conviction may be such as to show that applicant is trustworthy, or it may be that his life and course of dealing since that time are such as to show him to be entirely trustworthy and competent. But it was the duty of the applicant to present these facts, and in the absence of such proof it must be held that the board did not act without evidence to sustain their determination."

It seems to us that both the board and the trial court failed to read the record aright.   Eight years ago relator was convicted of an offense which we are not inclined to minimize either because of its nature or because it may be a fact that relator sought to shield the really guilty party. He paid the prescribed penalty.   He was restored to citizenship according to law.   He served one term in the legislature.   The testimony of Mr. Zimmerman, our secretary of state, of Mr. Lawton, a merchant in Milwaukee, and of Mr. Rubin, a lawyer of Milwaukee, was to the effect that each had

known him for a long time and that he was a man of good moral character and that he was competent and trustworthy. There is nothing in the record to contradict such evidence except the conviction. Our conclusion is that a conviction of such an offense, followed by the payment of the penalty exacted by the law, the restoration to citizenship, and the living of an upright life for eight years thereafter, overcomes the moral turpitude involved in the commission of the offense and shows affirmatively that the relator is now possessed of the required moral qualities. To hold otherwise would be to declare that there is no place in our law for reformation. But such is not the case. The law recognizes that a single lapse from rectitude may be wiped out by time and upright conduct; that a single misstep does not damn a man forever; that there can be a secular as well as a divine atonement; and that in earthly affairs also we should rejoice more over the repentance of one who has gone astray than over the ninety-and-nine who have not done so. The law is said to be harsh, and it often has to be because it usually deals with human delinquencies; but it is not so harsh as to ignore the rightful place and efficacy of a reformation where that is clearly shown. To disregard such reformation would be to breed disrespect for law. We regard of but slight importance the discrepancy in the answers of the relator contained in the application and in his testimony as to whether or not he had read the real-estate license law. The questions are not identical, the latter also asking if he was familiar with it. The claim is made that the answer "Yes" was truthful as to his familiarity with the law, though he had not read it.

If the board had knowledge of other facts than those which the record discloses it should have made them a matter of record. We must therefore assume that the record discloses all the facts the board acted upon.

The court is not unmindful of the fact that upon *certiorari* the findings of the board will not be disturbed if there

State ex rel. Schiewitz v. Wisconsin R. E. B. Board, 188 Wis. 632.

is any competent evidence to sustain them.   But where the evidence is all one way the board cannot disregard it.   The conviction of the stated offense is the only contradiction to the conclusion that he has always been a man of good moral character.   The relator produced all the evidence required by the board.   There was no intimation to him that the letters furnished were not satisfactory or the writers thereof not to be believed.

We need not, and do not, say that a pardon wipes out the past, and we do not discuss situations where boards or courts have held one way or the other where there is room for different inferences to be drawn from the evidence.   In order to reverse in this case it must be said that the action of the board was unreasonable, arbitrary, or without evidence. We prefer to put it upon the latter ground, holding as a matter of law that under the facts in this case the conviction of the relator eight years ago of the offense stated was by his pardon, his service in the legislature, and the testimony as to his subsequent good moral character and trustworthiness, rendered of such slight probative force that it did not furnish a basis for refusing a license to engage in the real-estate business.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment reversing the order of the *Wisconsin Real Estate Brokers Board,* and for further proceedings according to law.