211 So.2d 240 (1968)
Mike CARP, Petitioner,
v.
The FLORIDA REAL ESTATE COMMISSION and Cornelius L. Reagan, Respondents.
No. 67-959.
District Court of Appeal of Florida. Third District.
June 4, 1968.
Rehearing Denied July 3, 1968.
Henry R. Carr, Casper Hefty, Jr., and Michael H. Oritt, Miami, for petitioner.
Frank A. Wilkinson and Stanley A. Reese, Winter Park, for respondents.
Before PEARSON, BARKDULL and SWANN, JJ.
SWANN, Judge.
Mike Carp, a registered real estate broker in Florida, has filed his petition for writ of certiorari with this court. He was convicted of "bookmaking" in violation of Fla. Stat. § 849.25, F.S.A., which provides:
* * * * * *
(1) As used in this section, the term bookmaking shall be deemed to be the taking or receiving of any bet or wager upon the result of any trial or contest of skill, speed, power, or endurance of man, beast, fowl or motor vehicle.
(2) Whoever engages in bookmaking shall be guilty of a misdemeanor and, upon conviction, shall be punished by imprisonment in the county jail for not less than ninety days nor more than one year * * *.
(3) This section shall not apply to parimutuel wagering in Florida as authorized by the laws of the state * * *.
* * * * * *
A proceeding, in the form of an information was then filed against him, before the Florida Real Estate Commission, under Fla. Stat. § 475.25, F.S.A., which provides, in pertinent part:
"475.25 Grounds for revocation or suspension.
(1) The registration of a registrant may be suspended for a period not exceeding two years, * * * upon a finding of facts showing that the registrant has:
* * * * * *
(e) Been guilty of a crime against the laws of this state * * * involving *241 moral turpitude, or fraudulent or dishonest dealing * * *."
* * * * * *
Carp filed a motion to quash on the ground that bookmaking is not a crime involving moral turpitude. The Commission denied his motion and this petition for certiorari was taken.
In State ex rel. Tullidge v. Hollingsworth, 108 Fla. 607, 146 So. 660, 661 (1933), it was said:
* * * * * *
"Moral turpitude involves the idea of inherent baseness or depravity in the private social relations or duties owed by man to man or by man to society. * * * It has also been defined as anything done contrary to justice, honesty, principle, or good morals, though it often involves the question of intent as when unintentionally committed through error of judgment when wrong was not contemplated. * * *" (Emphasis added)
* * * * * *
In Everett v. Mann, Fla.App. 1959, 113 So.2d 758, however, the Court held that the mere possession of lottery tickets was not a sufficient basis for the suspension of a real estate broker's license in Florida under Fla. Stat. § 475.25, F.S.A.
The public policy of the State of Florida, as set forth by the legislature, requires the exclusion from all race tracks in the State of any person who has been convicted of bookmaking.[1] Florida has also enacted a statute,[2] which prohibits the use of a telephone or telegraph for bookmaking or other illegal gambling purposes in the State. Its legislature has forbidden the keeping of a place for the purposes of gambling, including bookmaking within the State of Florida. See Fla. Stat. §§ 849.01 and 849.03, F.S.A.
It has declared that it is the public policy of the State that gambling contracts relating to bookmaking are void, Fla. Stat. § 849.26, F.S.A. This is so even though the gambling contracts are valid in the State where they are executed. See Young v. Sands, Inc., Fla.App. 1960, 122 So.2d 618.
In Florida, the legislature has authorized parimutuel wagering on certain racing and jai alai. The enactment of this act did not change the public policy of the state in regard to gambling and the operation of gambling houses. See Valdez v. State ex rel. Farrior, 142 Fla. 123, 194 So. 388 (1940). The State receives taxes from legalized parimutuel wagering and apportions these tax revenues among the various counties of the state. Bookmaking deprives the state and counties of the legitimate tax revenues to which they would be entitled if the wagering were done under the proper state laws.
The following have been held to be crimes involving moral turpitude:
Violations of state and federal liquor laws: State v. Bieber, 121 Kan. 536, 247 P. 875, 48 A.L.R. 252 (1926); Rudolph v. United States ex rel. Rock, 55 App.D.C. 362, 6 F.2d 487, 40 A.L.R. 1042 (1925); and Chanan Din Khan v. Barber, 147 F. Supp. 771 (D.C.Cal. 1957); Tseung Chu v. Cornell, 247 F.2d 929 (9th Cir.1957); In re Seijas, 52 Wash.2d 1, 318 P.2d 961 (1957); extortion: In re Disbarment of Coffey, 123 Cal. 522, 56 P. 448 (1899); embezzlement: In re Shumate, 382 S.W.2d 405, Ky.App. 1964; using the mails to obtain property under false pretenses: In re Comyns, 132 Wash. 391, 232 P. 269 (1925); In re Needham, 364 Ill. 65, 4 N.E.2d 19 (1936); selling opium: In re McNeese, 346 Mo. 425, 142 S.W.2d 33 (1940); possession of counterfeit money: State Medical Board v. Rodgers, 190 Ark. 266, 79 S.W.2d 83 (1935); indecent exposure: Brun v. Lazzell, 172 Md. 314, 191 A. 240, 109 A.L.R. 1453 (1937).
We find that a registered real estate broker who has been convicted of bookmaking in Florida, has been guilty of a crime against the laws of this state involving moral turpitude *242 and we follow the Supreme Court decision in Hollingsworth, supra. The Petition for Writ of Certiorari is, therefore,
Denied.
NOTES
[1] Fla. Stat. § 849.24, F.S.A.
[2] Fla. Stat. Chapter 365, F.S.A.