**In the Matter of Samuel J. FRABIZZIO.**

Supreme Court of Delaware.
Submitted: March 27, 1986.
Decided: April 18, 1986.

Lawrence M. Sullivan (argued), Wilmington, for petitioner.

L. Susan Faw (argued), Disciplinary Counsel, Wilmington.

Before CHRISTIE, C.J., McNEILLY, HORSEY, MOORE, and WALSH, JJ., constituting the Court en banc.

CHRISTIE, Chief Justice:

On August 30, 1985, this Court entered an order by which petitioner was "prohibited from engaging in the private practice of the law as a member of the Delaware Bar for a period of two years...." Petitioner has filed a request for instructions pursuant to that order. In his request, petitioner proposes to act as a law clerk-paralegal in the private law practice of Lawrence M. Sullivan, Esquire. It is proposed that clients be told of Mr. Frabizzio's status, but thereafter, as a law clerk-paralegal he would be allowed to have personal contact and telephone contact with clients, witnesses, and prospective witnesses. Disciplinary Counsel opposes the employment of petitioner as a paralegal or as a law clerk to the extent it involves any interpretation of the Court's order which would allow direct contact with members of the public. Therefore, this Court must now interpret its order of August 30, 1985 in order to determine whether such activity is permitted under it.

There is a dearth of caselaw concerning whether an attorney suspended from the practice of law may be employed in a law office where he will have direct contact with the public. *See,* Annot., 87 A.L.R.3d 279 § 8.5 (Supp.1985). A single case has been uncovered on this point, *The Florida Bar v. Thomson,* Fla.Supr., 310 So.2d 300 (1975).

In that case the petitioner, a suspended member of the Florida Bar, was permitted to act as a law clerk or investigator in a two-attorney law office. The court apparently thought this was an appropriate way for petitioner to maintain his competency to practice law upon reinstatement and to demonstrate his potential for rehabilitation. When he applied for reinstatement, a majority of the court held that reinstatement would not be denied on the basis that petitioner had been having direct contact with clients because the suspension order had not specifically forbidden such activity. *The Florida Bar v. Thomson,* Fla.Supr., 354 So.2d 872 (1978). Moreover, such contact had been minimal, "largely for the purpose of relaying information to attorneys out of the office...." However, the court clearly stated that nothing in its opinion was to be taken as an indication that it

would tolerate direct client contact by a suspended attorney performing lay legal services in the future. *Id.* at 874.

The reason the court ruled against such contacts in future cases is readily apparent. As stated by Justice Overton in his dissent:

> To the layman, the difference between mere clerking and the unrestrained practice of law is not readily apparent. He observes an attorney, supposedly under suspension for unethical conduct, walking into law offices; necessarily he must wonder whether the attorney is indeed being disciplined. This confusion is compounded when the disciplined attorney is interviewing witnesses as an investigator on behalf of the law firm or otherwise discussing cases with clients. The resulting detriment to the integrity and reputation of the Bar is obvious.... I am also concerned that the attorney who is suspended or disbarred for unethical conduct, upon returning to a law office, will encounter difficulty in confining himself to strictly preparatory functions.

*The Florida Bar v. Thomson,* Fla.Supr., 310 S.2d 300, 303 (1975).

This Court will not sanction direct professional contact by a suspended attorney with the public. The Court would regard such contact as a form of "private practice of the law". The *Thomson* court's contrary holding is distinguishable in at least two respects. First of all, this Court is acting upon a petition for instructions before such contacts take place. Secondly, the contacts here proposed were to be routine in nature. Under the circumstances, we think the following observation applies:

> A suspended lawyer is not the same as a layman. The public knows that he has a legal education, that he has engaged in the practice of law, and that his work and opinions are presumably more valuable on that account. We cannot accept the argument that a ... suspended lawyer may engage in all activities which nonlawyers also perform.

*Application of Christianson,* N.D.Supr., 215 N.W.2d 920, 925 (1974).

To the extent that this opinion is inconsistent with the practice which was followed in the case of *In the Matter of: Dennis A. Reardon,* Del.Supr., 369 A.2d 666 (1977), and the letter of Chief Justice Herrmann dated January 20, 1977 interpreting that opinion, the *Reardon* case is overruled.

Petitioner may perform the tasks usually performed by law clerks and by paralegals, as outlined in his December 17, 1985 Request for Instructions except that he may not have direct contact as a law clerk or paralegal with clients, witnesses, or prospective witnesses.